**Mayer Law Group, LLC**
66 Witherspoon St., Ste. 414
Princeton, NJ 08542
(609)-921-8025

*Attorneys for Plaintiffs*

**Marcus & Auerbach, LLC**
101 Greenwood Ave. Ste. 310
Jenkintown, PA 19046
(215)-885-2250

| | |
|---|---|
| JOSE CORTEZ, DAN MOLLOY, DOREEN ROSADO, NANCY MINUTILLO, DEBRA MINUTILLO, SEAN KELLY and ANNE LOCKWOOD, and all other similarly situated<br><br>            Plaintiffs,<br><br>            vs.<br>UNITED WATER NEW JERSEY INC., and HOMESERVE USA, f/k/a HOME SERVICE USA CORP.<br><br>            Defendants | SUPERIOR COURT OF NEW JERSEY BERGEN COUNTY: LAW DIVISION<br><br>CIVIL ACTION CLASS ACTION<br><br><br><br>Docket No: BER-L-11374<br><br><br><br>SECOND AMENDED COMPLAINT AND JURY DEMAND |

### (PROPOSED) SECOND AMENDED CLASS ACTION COMPLAINT

1.   Plaintiffs, Dan Molloy, Doreen Rosado, Jose Cortez, Nancy and Debra Minutillo, and Sean Kelly and Anne Lockwood, by and through their undersigned attorneys, for themselves and all others similarly situated, bring this action against defendants, for compensatory and treble damages and other relief, arising from defendant's wrongful conduct as described herein. Defendant United Water New Jersey Inc., a private company providing water utility service in Bergen and Hudson Counties, and defendant HomeServe USA have engaged in a practice of

marketing unregulated service contracts to New Jersey customers and collecting and accepting premium payments while providing illusory coverage and benefits.  Plaintiffs seek certification of this matter as a class action, and demand a jury trial as to issues triable by a jury.  For their class action complaint against defendants, plaintiffs allege as follows:

**THE PARTIES**

2.    Plaintiff Jose Cortez is an individual who owns and/or possesses the premises at 813 18th Street, Union City, NJ and resides at said premises.  Plaintiffs DAN MOLLOY and DOREEN ROSADO reside and own and/or possess the premises at 812 18th Street, Union City, NJ.  Plaintiffs NANCY and DEBRA MINUTILLO are individuals who own and/or possess the premises at 2408 New York Ave., Union City, NJ and reside at said premises, which is a multi-unit dwelling. Plaintiffs SEAN KELLY and ANNE LOCKWOOD are individuals who own and/or possess the premises at 1027 Garden Street, Hoboken, NJ and reside at said premises, which is a multi-unit dwelling.

3.    Plaintiffs bring this action individually and on behalf of the Class of similarly situated customers, as further defined at paragraph 26 below.

-2-

4.    Defendant United Water New Jersey Inc. (hereinafter "UWNJ" or "United Water"), formerly known as Hackensack Water Company Inc., was at all relevant times a business corporation organized and existing under the laws of the state of New Jersey, with its principal place of business located at 190 Moore St., Hackensack, NJ  07601.

5.    Defendant HomeServe USA, f/k/a Home Service USA Corp. (hereinafter "Home Service") was at all relevant times a business corporation organized and existing under the laws of the commonwealth of Pennsylvania, with its principal place of business located at 3401 NW 82nd Avenue, Suite 220, Miami, Florida 33122.  As more fully alleged herein, Home Service has throughout the relevant time period done business throughout New Jersey, including in Bergen County.

6.    Venue is proper pursuant to New Jersey Court Rule 4:3-2(a) and (b).  This Court has jurisdiction because this is an action against a defendant which is incorporated under the laws of New Jersey, with a principal place of business in the State of New Jersey, and which regularly conducts business in the State of New Jersey, including Bergen County.

**FACTS**

7.   Defendant UWNJ was at all relevant times engaged in the business of providing water utility service to residential and business customers, subject to the master tariff filed with the state's Bureau of Public Utilities.

8.   Defendant United Water New Jersey was founded as Hackensack Water Company in 1869.  The company was acquired by United Water Resources, which owns and operates water utilities across the country, and defendant's name was changed to United Water New Jersey in 1995.

9.   According to United Water's web site, it supplies the water needs of 750,000 people in New Jersey, and has more than 186,000 customers, and 300 employees.

10.   However, the claims stated herein do not arise from United Water's public utility service, but from unregulated conduct and business activities of the defendants, that are not subject to utility regulation or the master tariff.

11.  At all relevant times, Defendant UWNJ has enjoyed the monopoly position of supplying necessary water service to the plaintiffs at their respective property locations identified above.

-4-

12.   Defendant UWNJ used its business advantages, including customer lists and existing relationship under the utility monopoly, to market, solicit, and obtain various service contracts with the plaintiffs.

13.   Pursuant to licensing agreements, including a May 19, 2005 Licensing and Marketing Agreement, United Water partnered with Home Service under which Home Service offers United Water customers certain service agreements administered by Home Service.

14.   Under the licensing agreements, including the agreement dated May 19, 2005, defendant Home Service pays United Water a commission for each customer who becomes a subscriber to a service agreement.

15.   Under the service contracts, defendants charged premium payments, and entered into contractual agreements pursuant to which a third-party contractor would provide particular types of service.  For example, defendants offered the following types of service contracts:

   a. A plan to cover interior plumbing, known as "Internal Plumbing & Drainage Coverage";

-5-

b. A plan to cover the water supply line that connects defendant's water main, called "Water Service Line Coverage" and/or "Leak Guard".

c. A plan to cover the septic line that takes waste water from the home to the sewer line in the street, called "Sewer/Septic Line Coverage" and/or "Sewer/Septic Line Plus Coverage".

d. A plan to cover boilers and furnaces, known as "Heating Coverage".

e. A plan to cover internal electrical wiring, known as "Electrical Coverage."

16. Defendants marketed and promoted these plans with assurances of prompt response for emergencies, quality repairs by qualified local contractors, and "guaranteed acceptance."

17. The named plaintiffs herein had purchased these plans as follows:

a. Plaintiff Dan Molloy signed up for United Water's Leak Guard policy on February 5, 2003; this policy covers the outside clean water pipes from the water main to the water meter inside the house. Plaintiff Dan Molloy signed up for the Internal Plumbing and

Drainage policy for the first time around April 2007. The policy was cancelled by United Water on September 5, 2007, because Plaintiff's home was a two family dwelling; Dan Molloy enrolled again in the very same program on September 5, 2009 and the policy is still in force; this is a policy Internal Plumbing & Drainage which covers water pipes and waste lines within plaintiffs' home.  Plaintiff Molloy pays $39.96 quarterly on a credit card for the Internal Plumbing and Drainage coverage and approximately $18.00 appears as a line item on the United Water bill for the LeakGuard service.

b. Plaintiff Jose Cortez purchased his policy as follows; LeakGuard for coverage of fresh water pipes outside the house on July 2, 2000; Electric wiring coverage was purchased and in force between 2006 and 2007; and Plumbing and Drainage coverage for the inside pipes and sewer lines was purchased and in force from 2005 – 2009.

c. Plaintiffs Nancy and Debra Minutillo signed up for United Water's Sewer/Septic Line Plus Coverage, which

covers external sewer and septic lines, on January 8, 2008, and had such coverage at least from 2008 to 2012; Internal Plumbing and Drainage coverage which covers water pipes and waste lines within plaintiffs' home, and had such coverage at least in 2010; and United Water's LeakGuard coverage, which covers the outside clean water pipes from the water main to the water meter inside the house, on November 3, 2006, and had such coverage at least from 2006 to 2012. Nancy and Debra Minutillo currently pay $83.33 per year for the LeakGuard service.

d. Plaintiffs Sean Kelly and Anne Lockwood signed up for LeakGuard coverage, which covers the outside clean water pipes from the water main to the water meter inside the house, on October 14, 2009, and had such coverage at least from 2009 through 2011; and Internal Plumbing and Drainage coverage, which covers water pipes and waste lines within plaintiffs home, on October 4, 2009, and had such coverage at least from 2009 through 2011.

18.  Each of these plans cost an annual premium in the area of $75 to $170.  However, the plans had certain restrictions such as a limit on total costs or number of service calls, an exclusion of pre-existing conditions, and a waiting period.

19.  In addition to the coverage restrictions, these plans (except for LeakGuard coverage purchased prior to July 1, 2005, called "Legacy" LeakGuard customers) did not cover multi-unit dwellings.

20.  By means of, among other things, its installation, maintenance, and inspection of water meters, defendants had at all times the ability to determine whether any given property in its service area was a multi-unit building.  Defendant UWNJ, by its very nature, has been servicing the area for over 150 years and at all relevant times had knowledge of all buildings in plaintiff's geographic area.

21.  Despite such knowledge, defendants took no measures to refrain from marketing or promoting its service plans to multi-unit buildings, and regularly accepted premiums and entered into and sought to enter into contracts with owners of multi-unit buildings such as plaintiffs.  On one of the plaintiff's blocks, for example, there is not one single family home on the street;

-9-

in fact there are few single family homes anywhere in Union City. According to the United States Census there are 23,741 total housing units in Union City. Of those, only 947 are single family homes. (Thus roughly 3.98% of homes are single family.)

22. Defendants had a practice, when claims were made, of denying coverage whenever it suspected that there were multiple units in the building.

23. On information and belief, defendants concealed their intentions by regularly marketing and accepting service plan contracts with multi-unit building owners, thereby collecting and retaining proceeds that were pure profit even though the defendants provided no services or consideration, and knew or had reason to know that they would deny coverage if any claims were made.

24. Defendants' deceptive practice of selling service plans to owners of multi-unit buildings injured plaintiffs and members of the Class in the following ways:

   a. plaintiffs were deprived of the money that they paid in premiums;

b. plaintiffs refrained from obtaining alternate coverage that could provide protection;

c. plaintiffs were denied service in the event of an emergency;

d. plaintiffs were deprived of the promised peace of mind and confidence that emergency service would be provided without delay or additional expense;

e. plaintiffs were subjected to the risk that they would be unable to arrange emergency service, or would have to pay excessive costs to obtain service in the event of an emergency;

25. By all these means, defendants enriched themselves and on information and belief, systematically, intentionally and wrongfully failed to pay claims.

## CLASS ACTION ALLEGATIONS

26. This action is brought by plaintiffs as a class action pursuant to Rule 4:32 of the New Jersey Court Rules, on behalf of themselves and a class of all other similarly situated customers. The Class consists of:

All New Jersey residents who, at any time from six years prior to the filing of the original

complaint through the present, lived in a multi-unit dwelling and purchased a LeakGuard, water service line, internal plumbing, septic, heating, or electric service plan issued by Home Service and marketed by or with the assistance of United Water or any other utility company, where such plan provided that multi-unit dwellings were not eligible for coverage.

27.   Plaintiffs are members of the Class they seek to represent.

28.   On information and belief, the Class is believed to include more than 1,000 customers.  As a result, joinder of all class members in a single action is impracticable.

29.   There are important questions of law or fact common to the entire Class, and to the entire Subclass, including:

   a. Whether defendants knowingly marketed service plans to multi-unit dwelling owners;

   b. Whether defendants systematically, intentionally and wrongfully accepted premiums from multi-unit owners;

   c. Whether defendants intended to defer any determinations as to whether any service plan holder was a multi-unit until and unless a claim was made;

   d. whether defendants thereby wrongfully enriched themselves;

e. Whether United Water wrongfully exploited its position of trust and its business advantages as a public monopoly, to obtain premiums for service plans that it never intended to honor;

f. whether defendants violated the Consumer Fraud Act by their conduct;

g. The appropriate measure of damages for defendants' wrongful conduct.

30. The important questions common to the members of the Class, including those identified in the previous paragraph, predominate over any questions unique to individual members of the Class.

31. The claims of plaintiffs are typical of the claims of other members of the Class. Like all members of the Class, plaintiffs paid premiums for a service plan, whose benefits were illusory.

32. There are no conflicts between the interests of plaintiffs, and those of the Class, and on information and belief, there are no defenses unique to any of them.

33. Plaintiffs will fairly and adequately assert and protect the interests of the Class in that:

-13-

a. Plaintiffs are represented by experienced and able class action counsel; and

b. Plaintiffs have no conflicts of interest with the other members of the Class.

34.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

35.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

a. The Class is not so large in size that there would be any difficulty in managing it;

b. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications and incompatible standards of conduct;

c. This Court is the appropriate forum for all of the claims of the Class because defendant UWNJ is headquartered in New Jersey and defendants do business in New Jersey, the plaintiffs and their beneficiaries are

-14-

located in or near this forum, and the conduct complained herein occurred in, and was orchestrated and conducted from New Jersey, among other places;

d. Many members of the Class may be unaware of the existence of their claims without the notice provided by a class action;

e. Given the complexities of the issues and the expenses of litigation, the claims of many or most individual members of the Class may be too small, as a practical matter, to justify separate actions against Defendants;

f. On the other hand, the claims of the individual members of the Class are not so small that a class action would be unjustified in light of its expense and effort;

g. A class action will conserve administrative and judicial resources by avoiding unnecessary multiplication of claims and litigation.

### COUNT I
### BREACH OF CONTRACT

36.  The allegations of the preceding paragraphs are incorporated by reference.

37. Defendants' misconduct constitutes a material breach of contract, and a breach of the implied covenant of good faith and fair dealing.

38. Defendants were the authors of the contractual form language that gives rise to this cause of action. As a result, that language should be strictly construed against defendants as the drafters.

39. Plaintiffs, and the other members of the Class, have been damaged as a consequence of Defendants' misconduct and breach of contract.

**COUNT II**
**CONSUMER FRAUD ACT**

40. The allegations of the preceding paragraphs are incorporated by reference.

41. Plaintiffs and the other members of the Class are "persons" within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq.

42. Defendants' activities as described herein constituted "sales" of "merchandise," including goods and services, within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq.

-16-

43.   Defendants' conduct, as described above, was an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts with intent that others rely upon such concealment, suppression or omission, all in violation of the Act, § 56:8-2.   Such conduct, as described above, includes, but is not limited to:

a. representing that the service plans would provide coverage and guaranteed acceptance when they did not;

b. accepting premiums when defendants knew or should have known that coverage would be denied in the event of a claim.

c. accepting premiums from individuals that defendants knew or should have known lived in multi-unit dwellings.

44.   Plaintiffs have sustained ascertainable loss, in that they paid premiums for service plans with a promise of "guaranteed acceptance," when the coverage was illusory and defendants intended to deny coverage in the event any claim was made.   As a result of the defendant's wrongful conduct, plaintiffs sustained damages and claims all damages, including treble damages, provided under § 56:8-19.

-17-

**COUNT III**
**UNJUST ENRICHMENT**

45.   The allegations of the preceding paragraphs are incorporated by reference.

46.   Defendants, through their wrongful conduct described above, have reaped substantial financial benefits at the expense of plaintiffs.  Defendants' profits would have been reduced, but for their wrongful and unlawful conduct.

47.   Accordingly, defendants have been unjustly enriched by their unlawful and wrongful conduct. Defendants should not be allowed to retain the proceeds and benefits conferred upon them by plaintiffs and the Class.

48.   In equity and good conscience, it would be unjust and inequitable to permit defendants to enrich themselves at plaintiffs' and the Class' expense.  Therefore, defendants must disgorge their unjustly acquired profits and other monetary benefits resulting from their unlawful conduct and provide restitution to plaintiffs and the Class.

## COUNT IV
## VIOLATION OF THE PLAIN LANGUAGE ACT
## (N.J.S.A. 56:12-1)

49.  The allegations of the preceding paragraphs are incorporated by reference.

50.  In the alternative and upon information and belief, any purportedly exclusionary language in defendants' contracts constitutes a violation of the New Jersey Plain Language Act for one or more of the following reasons:

(a) The contracts contain confusing cross references;

(b) The contracts contain exceptions to exceptions;

(c) The contracts contain double negatives;

(d) The contracts contain words that are either obsolete or have a legal meaning different from their common meaning; and

(e) The contracts contain language confusing to the average consumer.

## RELIEF

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief against defendants:

-19-

a. enter an order pursuant to Rule 4:32 of the New Jersey Court Rules permitting this action to be maintained as a class action on behalf of the Class as defined herein, appointing plaintiffs as the representatives of the Class and plaintiffs' counsel as counsel for the class;

b. enter an order requiring defendants to bear the costs of the notice required by Rule 4:32-2(b);

c. enter a compensatory judgment in favor of the plaintiffs and the Class against the defendants in an amount to be proved at trial, including costs incurred by the class in repairing damage to property that was supposedly covered but in fact was not;

d. awarding plaintiffs and the Class treble damages pursuant to § 56:8-19;

e. awarding plaintiffs and the Class pre-judgment and post-judgment interest;

f. awarding plaintiffs and the Class their costs and expenses in this litigation, including, but not limited to, expert fees and reasonable attorneys' fees, pursuant to § 56:8-19 and other applicable law;

-20-

g. ordering that the amount to which defendants have been unjustly enriched by their illegal conduct be refunded to the plaintiffs and the Class;

h. ordering defendants to disgorge their illegal profits to the plaintiffs and the Class;

i. ordering an accounting of the amount of money illegally obtained by the defendants;

j. enjoining defendants from future deceptive marketing and promotion practices in selling illusory service plans to multi-unit dwelling owners;

k. awarding punitive damages to plaintiffs and the Class; and

l. awarding such further relief as this Court deems necessary, just and proper.

Date: July 24, 2012

**Marcus & Auerbach LLC**

By:_____
Jerome M. Marcus
Jonathan Auerbach
Steven G. Tyson
101 Greenwood Ave., Ste. 230
Jenkintown, PA 19046
(215) 885-2250
*Pro hac vice*

-21-

**Mayer Law Group, LLC**
Carl J. Mayer, Esq.
66 Witherspoon Street, Suite 414
Princeton, NJ 08542
(609)-921-8025


Steven E. Schwarz, Esq.
The Law Offices of Steven E. Schwarz, Esq.
2461 W. Foster Ave., Suite 1W
Chicago, IL 60625
(773) 837-6134


Bruce I. Afran, Esq.
Attorney-At-Law
10 Braeburn St.
Princeton, NJ 08540
(609)924-2075

*Counsel for Plaintiffs*

<u>**JURY DEMAND**</u>


Plaintiffs hereby demand trial by jury of all issues properly

triable thereby.



By:_____
          Steven G. Tyson



-22-

## DESIGNATION OF TRIAL COUNSEL PURSUANT TO R. 4:5-1(c)

Carl J. Mayer, Esq. and Jerome M. Marcus, Esq. are hereby designated as trial counsel in this matter.

By:_____
           Steven G. Tyson

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify in accordance with New Jersey Court Rule 4:5-1 that to the best of my knowledge, information and belief the instant matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and no other persons must be joined as parties.

By:_____
           Steven G. Tyson

-23-

## CERTIFICATION OF SERVICE

I hereby certify that an original and one copy of the within Plaintiffs' Notice of Motion for Leave to File a Second Amended Complaint, along with the supporting brief and exhibits, the proposed Second Amended Complaint, and the proposed form of Order, were on this date forwarded to the Bergen County Motions Clerk, Law Division, One Bergen County Plaza, Hackensack, NJ, 07601, via overnight mail; and that copies were on this date forwarded to Robert A. White, Esquire and Christopher Iannicelli, Esquire, counsel of record for Defendant, at Morgan, Lewis & Bockius LLP, 502 Carnegie Center, Princeton, New Jersey 08540, via overnight mail.

Steven G. Tyson

Dated:  July 24, 2012